UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SARA ARMAS, | ) |
| | ) |
| JASON BUSKEY, | ) CIVIL ACTION NO. _____ |
| | ) |
| and all others similarly situated, | ) DEMAND FOR JURY TRIAL |
| | ) |
| Plaintiffs, | ) CLASS ACTION |
| | ) |
| v. | ) ADR REQUESTED |
| | ) |
| DRiV INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COME Plaintiffs, Sarah Armas and Jason Buskey, through their Counsel MILLER, JOHNSON, SNELL & CUMMISKEY, P.L.C., SAHRBECK P.C., and TFPC, in the above action and complain on information and belief against Defendant, DRiV Inc., as follows:

1.  This case concerns Defendant selling a ball joint, which connects a wheel to a motor vehicle and is often replaced every ~ 60,000 miles ~ with a bolt of inadequate tensile strength. As such, when subjected to typical driving stress, the bolt breaks and the ball joint separates from the vehicle, creating a significant hazard for the vehicle occupants and any person or property in the vicinity.

2.  Industry standards require a bolt with a tensile strength of at least grade "8" to connect a ball joint to a vehicle. However, Defendant sells its ball joint with a bolt of a tensile strength of less than grade "8."

3.  Plaintiffs bring this class action complaint **to prevent grievous injuries** to those who purchased or will purchase Defendant's product, as well as to those who could be struck by

1

vehicles that veer out of control due to Defendant's failure to sell its ball joint with an adequate fastener.

4. ADR in the form of mediation is requested because Plaintiffs hope that Defendant was unaware that the bolts sold with the ball joints were of inadequate tensile strength, and that Defendant therefore will desire to construct an immediate negotiated remedy.

## JURISDICTION AND VENUE

5. Plaintiffs Sara Armas and Jason Buskey at all material times resided in Stonington, in the County of Hancock and State of Maine.

6. Defendant DRiV Inc. is a Delaware corporation with its Executive Offices in Southfield, Michigan and World Headquarters in Northville, Michigan.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Complete diversity exists because Plaintiffs and Defendant are citizens of different states. In addition, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District. In addition, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the alleged acts giving rise to the dispute occurred in this District.

## FACTS

9. At all material times, Defendant DRiV Inc. engaged in the design, manufacture, assembly, and sale of MOOG brand automotive ball joints, specifically part number K90262 and any substantially similar parts (collectively "Part K90262").

10. On September 13, 2022, Plaintiffs purchased Part K90262, which included bolts used for assembly and installation (the "Bolts"), from online retailer RockAuto LLC, doing business at www.rockauto.com.

11. Part K90262 was manufactured by Defendant DRiV Inc. or its affiliates and arrived in MOOG brand packaging from Southfield, Michigan.

12. The Bolts delivered with Part K90262 were manufactured by Nucor Incorporated, a North Carolina producer of steel fasteners, and they were Metric Bolts 9.8, which have a tensile strength of at least grade 5 and less than grade 8.



13. SAE International Standards require that bolts used as automotive fasteners must be Grade 8 or higher.

14. Defendant DRiV Inc.'s advertisements for MOOG state: "Trust MOOG for quality steering and suspension solutions to understand why they are the preferred brand of professional technicians."[1]

---

1.  https://www.drivparts.com/brands.html

15. Defendant DRiV Inc. writes of its MOOG brand parts:

> MOOG® is an industry-leading brand of premium replacement steering, suspension, wheel end and driveline products for passenger cars, light trucks, SUVs, and medium- and heavy-duty vehicles. By constantly introducing design innovations that extend product life and simplify installation and repair, MOOG has earned its reputation as the chassis industry's problem solver.
>
> MOOG's problem-solving innovations and advancements are made with the technician in mind. From a Problem Solver powdered metal gusher bearing that extends the life of MOOG tie rods to a pre-installed dust boot on our Problem Solver ball joints, these application-specific innovations can be found throughout the MOOG chassis portfolio.[2]

16. Defendant DRiV Inc. distributes, stocks, and supplies its MOOG brand auto parts to O'Reilly Auto Parts as one of O'Reilly's featured brand parts.[3]

17. Defendant DRiV Inc. also distributes, stocks, and supplies its MOOG brand auto parts to Advanced Auto Parts as one of Advanced's featured brand parts.[4]

18. In mid-September 2022, Plaintiff Jason Buskey, an experienced mechanic, correctly installed Part K90262 onto his 2000 Toyota Tundra (the "Vehicle") at his home in Stonington, Maine.

19. Plaintiff Jason Buskey followed the directions provided within the Chilton Toyota Tundra/Sequoia 2000-2007 Repair Manual.

20. Plaintiff Sara Armas, also an experienced mechanic, witnessed the installation and determined it was competently and expertly performed.

---

2. https://www.drivparts.com/brands/moog.html
3. https://www.oreillyauto.com/shop/brands/a/moog/moo
4. https://shop.advanceautoparts.com/find/moog-products

4

21. On December 6, 2022, Plaintiff Sara Armas was operating the Vehicle in Miami, Florida when the Bolts in Part K90262 snapped and separated from the control arm.

22. The cause of this snapping and separation was the insufficient tensile strength in the Bolts.

23. These photos show the inadequate and unsafe Bolts:



24. After Part K90262 separated from the Vehicle, the bolts utilized to re-affix Part K90262 to the Vehicle were Grade 8 original equipment manufacturer ("OEM") bolts provided by Toyota, the manufacturer of the Vehicle.

25. When ordering a ball joint for a 2000 Toyota Tundra from Toyota, the bolts Toyota provides are Grade 8 bolts.

26. The Bolts that Defendant DRiV Inc. provided with Part K90262 were sub-standard and unsafe.

27. Although Plaintiffs fortunately did not suffer physical injury due to the low speed at which the Vehicle was traveling when the Bolts snapped in two due to their inadequate tensile strength, Plaintiffs believe this action is needed to prevent what likely will be serious, devastating, and completely avoidable accidents.

28. Plaintiffs have incurred and will in the future incur expenses for lost wages and time taken to investigate Defendant DRiV Inc.'s failure to conduct adequate due diligence on the Bolts to determine whether the Bolts had the tensile strength needed to support Part K90262.

## CLASS ACTION

29. Plaintiffs bring this action on behalf of themselves and as a class action under Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of all members of the following Class: All persons who purchased Part K90262 and were provided upon such purchase with a bolt of a tensile strength of less than 8.

30. Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

31. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1) as the Class is so numerous that individual joinder of all Class Members is impracticable.

32. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact in this action relate to and affect the rights of the Plaintiffs and each Class Member, and the relief sought is common to the entire Class.

33. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class Members and arise from the same course of conduct by Defendant. The relief Plaintiffs seek is typical of the relief sought for the absent Class Members. Plaintiffs seek compensatory damages common to the Class and also seek to redress the unlawful conduct of Defendant.

34. This Class Action Complaint brought by the named Plaintiffs is typical of the claims of the Class in that the named Plaintiffs and Class Members purchased Part K90262 from Defendant and installed or may install such part on their vehicle.

35. The Class is ascertainable because its Members can be readily identified from Defendant's records and/or databases, or the records of those entities that sold Defendant's Part K90262.  Notice, if required, can be provided to Class Members by first class mail, social media, electronic mail, and/or by published notice using techniques and forms of notice similar to those customarily used in class action litigation.

36. Class certification is also appropriate because the cost of litigation may prevent Class Members from bringing individual cases, even though the relief requested could save the lives of the Class Members and others using the roads. Thus, Class Members need the relief sought herein, and Defendant is liable for the harm to Plaintiffs and the Class. Without class certification, Class Members may be unable to seek proper redress for the harm.

37. Further, utilization of the class action mechanism is likely to prevent significant harm, including but not limited to, through the notice process.  No other means exists to notify Members of the consuming public that Part K90262 is at significant risk to separate from the vehicle and could cause death or serious injury to persons and damage to property.

38. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by the individual Class Members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class Members, which would establish incompatible standards of conduct for Defendant; and because adjudication with

respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members, or impair or substantially impede their ability to protect their interests.

39. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant has acted and refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class Member.

40. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Common questions of law and fact regarding Defendant's conduct and responsibility predominate over any questions affecting only individual Class Members.

41. The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class Member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

42. Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

43. The undersigned counsel for Plaintiffs and the Class request that this Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Fed. R. Civ. P. 23(g). Undersigned counsel will fairly and adequately represent the interests of the Class, have identified or investigated the Class Members' potential claims, are experienced in handling class actions, other complex litigation, and claims of the type asserted in this action, know the applicable law, will commit sufficient resources to represent the Class, and are best able to represent the Class.

## COUNT I
## NEGLIGENCE

44. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

45. Defendant was negligent in selling Part K90262 with a Bolt of inadequate tensile strength.

46. Defendant failed to inspect and/or test the Bolts in order to determine whether or not they were in a defective or inadequate condition to secure the ball joint to the Vehicle.

47. Defendant failed to warn purchasers of the defective or inadequate condition of the Bolts.

48. Defendant failed to conform with the standards of the industry in the provision of Part K90262 with the Bolts.

49. As a result of Defendant's negligence, Plaintiffs have suffered injury for which they demand compensation.

## COUNT II
## STRICT LIABILITY

50. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

51. The Bolts provided to Plaintiffs were defective and unreasonably dangerous in that they were of sub-standard strength and suffered a catastrophic failure.

52. The Bolts were purchased and used by Plaintiffs without substantial change in the condition at the time of sale.

53. As a result of the defective and dangerous condition of the Bolts, Plaintiffs sustained injuries.

54. Defendant is strictly liable to Plaintiffs for the injuries that they have sustained.

## COUNT III
## BREACH OF WARRANTY

55. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

56. Defendant warranted to Plaintiffs that the Bolts were reasonably fit for the purpose for which they were intended.

57. The Bolts were not reasonably fit for the purpose for which they were intended.

58. As a result of the Defendant's breach of warranty, Plaintiffs sustained injuries.

## COUNT IV
## INJUNCTION, DECLARARTORY JUDGMENT, AND RELIEF

59. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

60. An actual controversy exists between Plaintiffs and Defendant as to whether the Bolts were defective, unsafe, and not reasonably fit for their purpose.

61. Plaintiffs seek a declaration that the Bolts are unsafe and defective.

62. Plaintiffs seek an injunction preventing Defendant from selling the Bolts with Part K90262.

63. Plaintiffs seek an Order from this Court requiring Defendant to replace, at Defendant's expense, all of the Bolts sold with Part K90262.

64. Plaintiffs seek an Order from this Court requiring Defendant to pay for the cost of reinstalling Part K90262 with bolts of adequate tensile strength supplied by the vehicle manufacturer.

65. Plaintiffs seek an Order from this Court requiring Defendant to refund any amounts paid by a Class Member for Part K90262 and pay for any loss associated with the Bolts failing due to inadequate tensile strength.

WHEREFORE, Plaintiffs seek the declaratory and injunctive relief set forth herein and demand judgment against Defendant in an amount sufficient to fairly and reasonably compensate Plaintiffs and the Class for damages, together with interest and costs, reasonable attorneys' fees, and such other legal and equitable relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Date: July 20, 2023

*s/ Todd A. Holleman*
Todd A. Holleman (P57699)
Miller Johnson
500 Woodward Ave., Suite 2800
Detroit, MI 48226
313.672.6939
hollemant@millerjohnson.com

Salvatore W. Pirrotta (P62596)
Miller Johnson
45 Ottawa Ave. SW, Suite 1100
Grand Rapids MI 49503
616.831.1739
pirrottas@millerjohnson.com

Talcott J. Franklin (P79402)[5]
TFPC
181 Western Promenade
Portland, Maine 04102
214-642-9191
tal@tfpc.me

Jonathan Sahrbeck, Esq.[6]
Sahrbeck, P.C.[7]
15 Silva Drive
Cape Elizabeth, ME 04107
207.233.8500
jonathansahrbeck@sahrbeckpc.com

---

[5] Also licensed in ME, NC, SC (inactive), & TX.  (E.D. Mich. application in process.)

[6] Licensed in ME.  (*Pro hac vice* application to be submitted.)

[7] A Maine Professional Corporation.